MARY V. SANDERSON, *et al.*, v. JAMES STREETER, *et al.*

VOLUNTARY CONVEYANCES; *If there is neither Present Debt, nor Fraud, Lands Conveyed are not Liable for Future Debts of Grantor.* Where G., who holds the title to certain real estate conveys the same to J., and J. holds the title over four years, and then conveys the same to the wife of G., and G. was not indebted at the time these conveyances were executed, and there was no intention on the part of any of the parties to hinder, delay or defraud any creditor of G., prior or subsequent, and said conveyances were duly acknowledged and immediately recorded, and some time subsequent thereto G. contracts a debt, *held,* that the real estate thus conveyed is not liable for said debt, although G. may now be insolvent, and the conveyances may have been voluntary, and without any consideration.

*Error from Davis District Court.*

AT the November Term 1872 of the district court said court found and decreed that a certain deed of conveyance from Jonathan Sanderson to *Mary V. Sanderson* was made without any consideration whatever passing from the said *Mary V.* to the said Jonathan; that at the time of said conveyance the said Jonathan Sanderson held said real estate in his name as the trustee of *George Sanderson;* that said con-

veyance by Jonathan Sanderson to said *Mary V.* was made at
the instance and request of said *George* in fraud, to cover up
and conceal the same from his creditors, and that said *Mary
V.* holds said real estate as a naked trustee of the said *George
Sanderson,* who is the equitable owner; that said real estate
is subject to the payment of a certain judgment for $622, and
interest and costs, recovered by the plaintiffs herein, *Streeter
& Rizer* against said *George Sanderson* and Evander Light;
and that unless the said defendants should pay the said judg-
ment, interest and costs within ten days from the date of
such decree, said lands and tenements should be sold to satisfy
said judgment.    Defendants *Mary V.* and *George Sanderson*
bring the case here on error.

*Case & Putnam,* for plaintiffs in error:

Our statute of frauds, (Gen. Stat., 504, § 2,) certainly is no
stronger or more unfavorable to plaintiffs in error than the
statute of 13 Eliz., ch. 5, which declares "all gifts, convey-
ances, and alienations of real or personal estate, whereby
creditors may be delayed or defrauded, void as against such
creditors." And judicial interpretation has determined that
creditors at the time of the transaction are alone intended by
the statute: 3 Johns. Ch., 481, 492; 4 Johns. Ch., 450; 2 Nott
& McCord, 544; Rand, 384; 8 Wheaton, 229. Before a
deed can be pronounced fraudulent by the court, where there
is a money consideration expressed, the jury must find fraud,
or at least such facts as will warrant the court in finding
fraud. 4 Wash. C. C., 139. This conveyance was not vol-
untary, and Sanderson was not indebted; and "to bring a
conveyance of land within the 13 Eliz., ch. 5, it must be vol-
untary, the grantor at the time indebted, and it must be made
with intent to hinder, delay and defraud creditors or others
of their pay and lawful actions." 1 Peters C. C., 460.

A voluntary deed is void only as to antecedent and not as
to subsequent creditors. 11 Wheaton, 133. That such con-
veyances are not void as to subsequent creditors, where no
intent exist to defraud such creditors, seems to be admitted

law; and if not fraudulent at the time, no subsequent creditors can disturb the title. 3 Washb., 297; 7 Allen, 150; 6 Mich., 466.

*McClure & Humphrey*, for defendants in error:

A person about to engage in business cannot, with a view of securing his property for the benefit of himself and family, in the event of losses occurring in such new business, convey such property to his wife voluntarily. Such conveyance is void as to subsequent creditors: 39 N. Y., 164; 2 Atk., 481; 37 Penn. St., 438; 8 Bosw., 97; 13 Iowa, 247; 23 Iowa, 66. A conveyance which is fraudulent as well as voluntary, is void as to subsequent as well as to existing creditors: 25 Iowa, 343; 13 How., 92, 99; 11 Wheat., 199; 1 Rob., Va., 123; 3 Porter, 196; 1 Story's Eq. Jur., § 356.

The opinion of the court was delivered by

VALENTINE, J.: In September 1872 James Streeter and Robert O. Rizer were the owners of a certain judgment, which they had previously recovered against George Sanderson and Evander Light. This judgment they could not collect in the ordinary way or on execution, on account of the insolvency of Sanderson & Light. So they therefore commenced this action against Sanderson and Light and Mary V. Sanderson, for the purpose of having certain real estate (the title to which was in Mary V. Sanderson,) declared subject to the payment of said judgment. The court below rendered judgment in favor of the plaintiffs, and the defendants as plaintiffs in error now bring the case to this court. The property which the court below ordered to be subject to the payment of said judgment was the undivided-half of Lots 12, 13 and 14, in Block 27, in Junction City. The order of the court below was made upon the ground that the property really belonged to George Sanderson, and not to Mary V. Sanderson, (his wife,) and that the title to the property was kept in her name merely for the purpose of hindering, delaying, and defrauding creditors. It appears from the record that in

1866 the title to the property was in fact in George Sanderson, that on June 13th 1866 he and said Mary V. his wife conveyed the same for the expressed consideration of $965 to Jonathan Sanderson. The deed of conveyance was acknowledged on the same day, and was recorded on June 15th 1866. The title thus conveyed remained in Jonathan Sanderson for over four years, when Jonathan conveyed the same to Mary V. Sanderson by two deeds, one of which was for the undivided-half of lots 11, 12 and 13, in said block 27, consideration expressed $1,000, dated August 11th 1870, acknowledged the same day and recorded August 26th 1870, and the other deed was for Lot 11 and the undivided-half of Lot 14 in said block 27, consideration expressed $1,000, dated September 9th 1870, acknowledged the same day, and recorded September 10th 1870. It does not appear that at the time these deeds were executed, acknowledged and recorded, George Sanderson was indebted to any person, or that he even contemplated contracting any debts. Nor has he since contracted or attempted to contract any debts of any considerable amount except the one for which said judgment was rendered. On May 10th 1871 George Sanderson was arrested on a charge of misappropriating government property. The time when said offense was supposed to have been committed is not shown or stated. The charge however was tried upon its merits, and Sanderson was acquitted. At the time he was arrested he promised one James H. Brown that he would pay Brown $500 for going on his recognizance as bail for his appearance at the next term of court. Afterward, on December 5th 1871, Sanderson as principal, and Light as surety, gave to Brown their promissory note for $600, due January 1st 1872, the consideration therefor being said $500 agreed to be paid to Brown for going Sanderson's bail, and $100 more for other debts recently incurred. This note was transferred by Brown to Streeter and Rizer, and upon this note Streeter and Rizer recovered their said judgment against George Sanderson and said Light. There was direct and positive evidence in abundance, outside of the several deeds of conveyance, that

said deeds from George and Mary V. Sanderson to Jonathan Sanderson, and from Jonathan Sanderson to Mary V. Sanderson, were made in good faith, and for a sufficient consideration. But suppose that they were not made in the best of faith. Suppose that they were made without any consideration — that they were purely voluntary — and still we cannot see how the plaintiffs (Streeter and Rizer) can question their validity. The deeds were not made to defraud them, nor in any manner to delay or hinder the collection of their claim. It cannot be supposed that the parties to the deeds could have had in contemplation at the time the deeds were made the state of things which afterward occurred, and out of which the plaintiffs' cause of action arose. It cannot be supposed that the parties expected when said deeds were executed that sometime in the future George Sanderson would be charged with the misappropriation of government property; that Brown should afterward go his bail, and that Sanderson and Light should afterward give their promissory note to Brown for $500 therefor. It was nearly five years after George Sanderson conveyed away his title to said lots before he was arrested on said charge; and there is no evidence in this case that he ever did misappropriate government property, or that he was even suspected of such a thing until he was arrested therefor. Said deeds could not have been executed to defraud prior or existing creditors, for it does not seem that George Sanderson had any such creditors. And they could not have been executed to defraud subsequent creditors, for there is no evidence that any of the parties ever contemplated that George Sanderson would have any of that kind of creditors. And the deeds were all immediately after their execution put on record, so that all persons dealing with any of the parties might know where the title to the property was. When Streeter and Rizer purchased said note of Brown they had had about five-and-one-half years in which to ascertain from the county register's office the fact that George Sanderson had conveyed away his title to said lots. Under such circumstances it would hardly seem that they could have

been very badly deceived or defrauded. The suspicious circumstances of this case are about these: It would seem that George Sanderson has a great deal of property in his possession, and that he does a large amount of business, but that the title to all the property is held by his wife, Mary V. Sanderson, and all the business is done in her name. Any person who will trust such a man perhaps ought to lose occasionally, in order to learn a proper lesson. But the courts cannot in such case take property held for a long time openly, notoriously and publicly by the wife, and pay debts subsequently contracted by the husband. We shall decide this case upon the theory that all of said deeds were voluntary, and that the title to said lots was a gift from George Sanderson to his wife Mary V., through the intervention of Jonathan Sanderson. And even upon that theory we must reverse the judgment of the court below.

Judgment reversed, and new trial ordered.

All the Justices concurring.