THE WESTERN UNION TELEGRAPH COMPANY v. THE
GETTO-MCCLUNG BOOT AND SHOE COMPANY.

**No. 742.*** (61 Pac. 504.)

1. EVIDENCE—*Res Gestœ—Statement of Agent.* In an action to recover damages resulting from failure to deliver promptly a telegram addressed to the plaintiff's attorneys and concerning the bringing of an attachment action, *held*, that a statement respecting such failure made by the agent of the telegraph company at the receiving office to the said attorneys when handing them the telegram three days after its date, was a part of the *res gestœ*, and was properly admitted in evidence.

2. ATTACHMENT—*Statutes of Arkansas—Construction.* Section 3 of chapter 17, Gould's Digest of the Statutes of Arkansas (1858), enlarged the apparent scope of section 1 thereof so that an attachment might be obtained not only against one who was a non-resident, but also against one who was about to remove out of the state, or about to remove his goods and effects out of the state, or who was secreting himself so that the ordinary process of law could not be served upon him.

3. INSTRUCTIONS—*Refusal.* An instruction must be good as asked, or it is not error to refuse it. (*Dickson v. Randal*, 19 Kan. 215.)

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed June 16, 1900. Affirmed.

*Stanley, Vermillion & Evans,* for plaintiff in error.

*Sankey & Campbell,* for defendant in error.

The opinion of the court was delivered by

MILTON, J. : In this action the defendants in error, a firm doing business in Wichita, Kan., recovered judgment against the plaintiff in error in the sum of $711.71, on account of alleged negligence of the latter in failing to deliver a telegram. The telegram was sent on February 21, 1890, by Shepperd, Grove &

*Petition for order to certify denied by supreme court July 7, 1900.—REP.

Shepperd, attorneys at Muscogee, I. T., to Sankey, Campbell & Amidon, at Wichita, Kan., concerning a proposed attachment action by the shoe company against Darling Brothers, who were merchants at Oklahoma City, and debtors to the shoe company in the sum of $502.50, for goods sold and delivered. At that time the United States court at Muscogee had jurisdiction in such actions over the territory known as Oklahoma, in which Oklahoma City was situated, under the act of congress of March 1, 1889, which extended the laws of the state of Arkansas covering civil causes over that territory. The attorneys at Wichita, representing the shoe company, sent the said claim to the attorneys at Muscogee, on February 18, 1890, with instructions to begin an attachment action thereon against Darling Brothers. On February 21 thereafter Shepperd, Grove & Shepperd delivered to the agent of the telegraph company at Muscogee the message in question for transmission. It reads :

"Have bank wire C. W. Turner here to furnish bond. Costs will be thirty-four dollars. Will draw for same."

On the 24th of the month the Wichita attorneys received a letter from Shepherd, Grove & Shepherd asking why there was no response to their telegram. Thereupon Mr. Amidon and Mr. Cambell visited the local office of the telegraph company at Wichita, and in answer to inquiries were shown by the manager of the office the message as there received. The telegraph company's agent admitted that "a blunder had been made," and claimed that the failure to deliver the message was the fault of an office boy. The message was actually put into the hands of Amidon and Campbell at that time but it is not shown in the record that they carried it away from the telegraph office.

The Muscogee attorneys were prepared on the 21st of February to file the attachment action, and the testimony tends to show that if the message had been promptly delivered to the attorneys at Wichita the attachment bond would have been arranged for and given and the suit filed on that day.

It was further shown that if the suit had been filed in the United States court at Muscogee on the 21st of February it would have been practicable for the United States marshal, personally or by deputy, to have attached the goods of Darling Brothers at Oklahoma City on the 24th of that month. After seeing the telegram, Sankey, Campbell & Amidom arranged through a Wichita bank by wire to furnish an attachment bond for the action, and the same was given, a suit begun on February 26, 1890, an attachment ordered issued therein, and the same delivered to the United States marshal for service. The goods of Darling Brothers were not found or levied upon by the marshal under the order, having been shipped from Oklahoma City on February 26, consigned to the Arkansas City Investment Company, which, by its representative, J. L. Huey, received such goods at Arkansas City, Kan., on February 27, and removed the same from the car late at night. Huey had previously obtained from Darling Brothers a bill of sale dated February 5, 1890, transferring to him all the merchandise belonging to Darling Brothers and described as being situate in Oklahoma City and in El Reno City. The purported consideration of the bill of sale was $3500, and the testimony on behalf of the defendant indicated that the bill of sale was intended as a mortgage to cover existing indebtedness. The attachment law of Arkansas, as introduced in evidence, was sections 1, 2, 3, 4, 5, 6 and 9 of chapter

55—9 KAN. APP

17, Gould's Digest of the Statutes of Arkansas, 1858. The first section reads : ·

"In all cases of absent or absconding debtors who may have property, real or personal in this state, the creditors may proceed against the same in the following manner, to wit :"

Section 2 relates to the filing of the "declaration, petition or other statement" in writing against the debtor.

Section 3 reads :

"The creditor shall, at the time of filing the declaration of his claim, also file an affidavit, of himself or some other person for him, stating that the defendant in the declaration or statement mentioned is justly indebted to such plaintiff in a sum exceeding $100, the amount of which demand shall be stated in such affidavit, and also that the defendant is not a resident of this state, or that he is about to remove out of this state, or that he is about to remove his goods and effects out of this state, or that he so secretes himself that an ordinary process of law cannot be served on him."

Section 4 mentions the officers before whom the affidavit may be made and section 5 provides for the filing of an attachment bond. Section 6 delares that "on the requisites hereinbefore prescribed being complied with, the clerk shall issue a writ of attachment," etc. Section 9 relates to the custody of the attached property.

There was evidence on behalf of the plaintiff below tending to prove that on or about the 16th of February, 1890, the stock of goods in the store of Darling Brothers at Oklahoma City was in a disturbed and disarranged condition, the appearance thereof indicating that part of such stock was being packed or being prepared for packing in boxes. A member of

the shoe company and one of their attorneys were led by the appearance of the said stock and of the store to suspect a design on the part of the Darling Brothers to remove the goods from Oklahoma City, and such suspicion was one of the chief causes for the attempted attachment proceedings.

The principal errors assigned by the plaintiff in error are that the court admitted incompetent evidence; that improper instructions were given and proper instructions were refused; and error in overruling defendant's demurrer to the plaintiff's evidence.

The alleged incompetent evidence which was received over the objection of the defendant below was the testimony of Mr. Amidon and Mr. Campbell, attorneys for the shoe company, concerning declarations of the telegraph company's agent at Wichita at the time the witnesses visited the telegraph office to inquire concerning the telegram. Counsel for plaintiff in error say that it is not shown that the person with whom these witnesses had the conversation testified to was in charge of defendant's office or had any connection with its business prior to the date that the conversation occurred; that such conversation was not a part of the *res gestæ*, as it was not shown to have been between the witnesses and a person having connection with the receiving of the telegram; and such conversation related to a past transaction, and therefore the declarations of the agent, if he was an agent of the telegraph company, could not bind the latter. The testimony showed that the defendant's agent gave the telegram in question into the hands of the witnesses, to whom the same had been addressed and sent, and that the declarations of the agent were made in connection with such delivery of the message. The trial

court regarded such declarations as being a part of the *res gestæ.* We see no reason to doubt the correctness of this view.

The principal facts respecting the message were that it was delivered at Muscogee for transmission by the defendant company and that it was finally by the defendant's agent at Wichita placed in the hands of the persons to whom it was addressed. The witness Campbell testified without objection on the part of the defendant that its agent at Wichita admitted that a blunder had been made in regard to the delivery of the telegram. What the agent said in addition to this appears to have been immaterial, and we think no harm could have resulted to the defendant from the admission of the testimony complained of.

A careful comparison of the instruction refused with those given leads to the conclusion that the trial court substantially covered all the declarations of law contained in the former which could properly have been given to the jury. Special stress is laid by counsel for plaintiff in error on the failure of the court to give requested instructions numbers 10, 14, and 8. The first-named instruction reads :

" The statute relating to an attachment, which it is claimed was in force at Oklahoma City during the year 1890, was the statute of Arkansas, which has been introduced in evidence, and the same only permitted an attachment against absent or absconding debtors. And in this case, before you could find any damages in favor of the plaintiffs, by reason of failure to have an order of attachment levied upon the property of the Darling Brothers at Oklahoma City, you must be satisfied, from a preponderance of the testimony, that the members of the said firm were either absent from the territory in which Oklahoma City was then situated, or that they were absconding therefrom."

Telegraph Co. v. Getto.

In view of the evidence the instruction was properly refused. Section 3 of the Arkansas statutes, *supra*, enlarges the apparent scope of section 1 thereof. In 1 Shinn on Attachment and Garnishment, page 156, in considering the cases in which an attachment will lie against non-residents, it is said:

"In Arkansas it will lie not only against one who is a non-resident, but against one who is about to remove out of the state, or is about to remove his goods and effects out of the state, or who is secreting himself so that the ordinary process of law cannot be served upon him." (Citing *Mandel v. Peet*, 18 Ark. 236, which construes the law in question.)

Requested instruction number 14 is substantially covered by the instructions given. Requested instruction number 8 was objectionable for several reasons, but principally because it assumed to inform the jury what the evidence tended to prove. "As asked, the instruction was improper. An instruction must be good as asked or it is not error to refuse it." (*Dickson v. Randal*, 19 Kan. 215; see, also, *Mayberry v. Kelley*, 1 id. 116; *Douglass v. Wolf*, 6 id. 88; *Kansas Ins. Co. v. Berry*, 8 id. 159; *State v. Cassady*, 12 id. 551.) We find no reversible error in the record. The verdict of the jury being supported by some competent evidence and having received the approval of the trial court, the judgment will be affirmed.